142 Nev., Advance Opinion 52



FILED

Aug 13 2026
ELIZABETH A. BROWN
CLERK OF SUPREME COURT

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ANGEL GUTIERREZ-ZACATENCO, Appellant, vs. ROSA HERRERA, Respondent. | No. 87032 |
| ANGEL GUTIERREZ-ZACATENCO, Appellant, vs. ROSA HERRERA, Respondent. | No. 89458 |

Consolidated appeals from a final judgment in a personal injury action and post-judgment orders denying a new trial, awarding attorney fees and costs, and denying NRCP 60(b) relief. Eighth Judicial District Court, Clark County; Danielle Pieper, Judge.

*Reversed in part, vacated in part, and remanded.*

Womble Bond Dickinson (US) LLP and Kory J. Koerperich and Daniel F. Polsenberg, Las Vegas; Carman Cooney Forbush PLLC and Sean Forbush and Adam C. Edwards, Las Vegas,
for Appellant.

Powell Stewart and Tom W. Stewart and Paul D. Powell, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, CADISH, J.:

NRS 52.325 provides that a custodian of records responding to a subpoena for medical records must authenticate the records by certifying that they are true and complete reproductions of the original medical records. The question here is whether a party seeking to authenticate medical records produced by the opposing party in discovery must satisfy those requirements. We conclude that NRS 52.325 is not the exclusive means of authentication in that circumstance. Rather, under NRS 52.015, a party may authenticate evidence simply by offering sufficient support for a finding that the evidence in question is what its proponent claims it to be.

The district court erred by excluding medical records for noncompliance with NRS 52.325's requirement that the records custodian certify that the records are a complete reproduction of the original set under the circumstances of this case. Specifically, appellant Angel Gutierrez-Zacatenco, who was the defendant below, obtained the records in discovery from the plaintiff, respondent Rosa Herrera, and those records purporting to show Herrera's medical treatment bore sufficient indicia of reliability. The custodian of records also attested to their accuracy. Though Herrera inadvertently omitted the record of her final 2017 treatment from her disclosure, rendering the records incomplete, the jury should nevertheless have been permitted to decide what weight to accord the records, including whether and to what extent their incompleteness diminished their evidentiary value. And while Gutierrez-Zacatenco failed to list the 2017 medical records in his pretrial disclosures as required by NRCP 16.1(a)(3)(A)(iii), we conclude that error was harmless because Herrera knew early in the case that Gutierrez-Zacatenco intended to rely on her

2

medical records to support his causation and damages defense. Had the district court admitted the 2017 medical records, the jury might reasonably have reached a different verdict. Accordingly, we reverse for a new trial.

*FACTS AND PROCEDURAL HISTORY*

Herrera allegedly sustained spinal injuries after Gutierrez-Zacatenco rear-ended her at a stoplight in 2019, and she subsequently underwent extensive treatment and surgeries. She sued Gutierrez-Zacatenco for negligence, and he admitted liability, leaving causation and damages as the sole issues for resolution at trial.

During discovery, Gutierrez-Zacatenco asked Herrera to produce "any and all medical records" from all prior and subsequent accidents. Herrera produced medical records from a similar spinal injury she sustained in a 2017 car accident. Most of the records were from treatment provider Align Med. Based on a comparison of Herrera's 2017 and 2019 medical records, Gutierrez-Zacatenco's medical experts—Dr. Tomas Kucera and Dr. Jeffrey Wang—concluded that Herrera's neck and arm pain were not causally related to the 2019 accident. Prior to trial, Gutierrez-Zacatenco sent Herrera his proposed trial exhibits, which included the 2017 records Herrera had produced. Herrera moved in limine to exclude evidence of the 2017 medical treatment on relevancy grounds, arguing that the 2017 accident was unrelated to her injuries sustained in the 2019 accident. She also sought to preclude or limit references to providers treating Herrera on a medical lien.

Herrera later submitted a trial brief arguing that the 2017 records should be excluded because Gutierrez-Zacatenco could not authenticate them and had not included them in his pretrial disclosures. Gutierrez-Zacatenco answered that the documents should be deemed authentic because they were produced by Herrera as a party-opponent. The

3

district court ruled that Gutierrez-Zacatenco could "bring up the 2017 accident" at trial but if he wanted to admit the 2017 medical records, he would need to authenticate the documents before trial through either NRS 52.325's subpoena procedure or testimony from a custodian of records. With respect to the medical liens, Herrera conceded that they could "come into evidence only for the limited purpose of showing bias," but the district court effectively excluded the medical liens altogether by determining that the collateral source rule barred any discussion about the source or amount of payment to the medical providers.

On the first day of trial, the district court held an evidentiary hearing to address the authenticity and relevance of the 2017 medical records, at which Dr. Kucera and Dr. Wang testified that the records were relevant and necessary to their opinions on causation. The district court held that the evidence of Herrera's 2017 accident was relevant because Gutierrez-Zacatenco's medical experts relied on the corresponding medical records in forming their opinions, and it therefore denied Herrera's motion in limine. It did not, however, rule on the authentication issue at that time.

The next day, Gutierrez-Zacatenco received a certificate of authenticity from Align Med's records custodian stating that the "records constitute true, exact, and complete duplications of the same records in the custody of this facility." But Gutierrez-Zacatenco realized that the records were missing three pages from Herrera's final 2017 treatment reflecting Herrera's release on maximum medical improvement (MMI). Thus, the 2017 records that Herrera produced and that were relied upon by Gutierrez-Zacatenco and his experts were incomplete. Although Herrera conceded that she had received the 2017 medical records through a medical authorization request and that she possessed a complete set of the records,

4

the district court ruled that Gutierrez-Zacatenco could not authenticate the records because he did not have a complete set. So, the court granted the motion in limine to exclude the 2017 records.

Herrera later submitted another trial brief arguing that the court should limit testimony from expert witnesses Dr. Kucera and Dr. Wang based on the exclusion of the 2017 records. The district court agreed and ruled that Dr. Kucera and Dr. Wang could not testify about the 2017 accident and the opinions set forth in their reports to the extent they relied on those medical records.

Following trial, the jury entered a verdict awarding Herrera roughly $3.8 million in damages. The district court denied Gutierrez-Zacatenco's motion for a new trial and introduced "an additional, independent ground" for excluding the 2017 records: Gutierrez-Zacatenco's "failure to list the 2017 [r]ecords in his supplemental disclosures or his pretrial disclosure." The district court awarded Herrera $1,661,785.78 in attorney fees and $114,673.50 in costs based on a rejected offer of judgment. Gutierrez-Zacatenco moved under NRCP 60(b) for relief from the order denying his motion for a new trial, which the district court also denied. Gutierrez-Zacatenco appeals.

## DISCUSSION

*The district court improperly excluded the 2017 medical records on authenticity grounds*

Though we generally review a district court's decision to admit or exclude evidence for an abuse of discretion, "to the extent the evidentiary ruling rests on a legal interpretation of the evidence code, de novo review [applies]." *Davis v. Beling*, 128 Nev. 301, 311, 278 P.3d 501, 508 (2012) (internal quotation marks omitted). Authentication is a "condition precedent to admissibility." NRS 52.015(1). "This principle is foundational

5

to the admissibility of evidence, as evidence cannot be deemed relevant if it is not what it is purported to be." *Talley v. State*, 141 Nev., Adv. Op. 61, 580 P.3d 101, 108 (2025). The authentication requirement is met when the proponent shows "that the matter in question is what its proponent claims." *Id.* Nevada's evidence code provides a nonexhaustive list of accepted authentication methods. *See* NRS 52.025-.105; *cf.* 31 Charles A. Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 7105, Westlaw (2d ed. database updated Sep. 2025) ("Authentication also can be accomplished through judicial admissions, such as stipulations, pleadings, and production of items in response to subpoena or other discovery request.").

NRS 52.325 sets forth the procedure a custodian of medical records may follow to comply with a subpoena for medical records by delivering those records to the clerk of the issuing court. In that circumstance, the statute requires the custodian of medical records to deliver "a true and exact photographic, electrostatic, or other acceptable copy of the original record authenticated" by the custodian's affidavit

> verifying that it is a true and *complete* reproduction of the original medical record and that the original record was made at or near the time of the act, event, condition, opinion or diagnosis by or from information transmitted by a person with knowledge in the course of a regularly conducted activity.

NRS 52.325(1), (2) (emphasis added).

The district court excluded the 2017 records, concluding that Gutierrez-Zacatenco failed to comply with NRS 52.325 because although the records custodian verified that the records were complete, they were missing Herrera's final 2017 appointment where she was released from chiropractic treatment at MMI, thus rendering the records incomplete.

6

Gutierrez-Zacatenco contends that NRS 52.325 is not the only way to authenticate medical records and that statute is inapplicable here because he did not subpoena Align Med for the 2017 records. Gutierrez-Zacatenco further argues that although the incompleteness of the records was an issue for the jury to consider in determining the weight to accord them, it did not render the records produced by Herrera inauthentic. We agree as to both points.

Contrary to Herrera's assertion, NRS 52.325's plain language limits its applicability to medical records produced by a custodian of records in response to a subpoena and does not declare, nor have we held, that it is the exclusive means of authenticating medical records. Gutierrez-Zacatenco did not subpoena Align Med and instead received the records from Herrera in response to a request for production. Thus, NRS 52.325 is inapplicable, and the general authentication provision contained in NRS 52.015 applies here.

Herrera analogizes this case to *Sanders v. Sears-Page*, 131 Nev. 500, 516, 354 P.3d 201, 211-12 (Ct. App. 2015). On the facts of that case, the court of appeals stated that "NRS 52.325 sets forth the procedure for authenticating medical records" but also acknowledged that in the broader context of admitting a medical record, NRS 52.015 sets forth the basic authentication requirement for evidence, and "NRS 52.025 through NRS 52.105 provide a nonexhaustive list of methods by which a document may be authenticated." *Id.* at 514-15, 354 P.3d at 211. The court of appeals determined that the district court improperly admitted a medical record because it was dropped off at the court on the last day of trial by an anonymous person. *Id.* at 516, 354 P.3d at 211-12. The doctor who testified to its authenticity was also unaffiliated with the facility that created the

record, had no personal knowledge regarding the record as required by NRS 52.025, and merely testified that the record "looked like a typical medical record." *Id.* at 516, 354 P.3d at 211. *Sears-Page* is therefore distinguishable from this case and does not stand for the broad proposition that all medical records must be authenticated via NRS 52.325, instead holding that on the facts there presented, the records were not sufficiently authenticated under either NRS 52.325 or NRS 52.015-.025.

In contrast to the proponent in *Sears-Page*, Gutierrez-Zacatenco made a prima facie showing of authenticity under NRS 52.015. Herrera produced her own medical records in response to a document request in discovery and does not dispute that the records accurately reflect the treatments she received in 2017, as is evident from her questioning of Dr. Kucera and Dr. Wang at their depositions and her motion in limine that sought to exclude those records as irrelevant. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 776 (9th Cir. 2002) ("[W]e recognize that an inquiry into authenticity concerns the *genuineness* of an item of evidence, not its admissibility." (emphasis added)). The documents also have indicia of authenticity through their distinctive characteristics, including that they show Align Med's official company letterhead and Herrera's full name and other personal identifying information. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (holding that a party made a prima facie showing of authenticity where the company challenging authenticity produced the documents, the company's letterhead was on the documents, and the company did not argue that the documents were not genuine).

Gutierrez-Zacatenco resolved any doubts as to authenticity by submitting a sworn certificate of authenticity from Align Med's custodian of

records, stating that the records produced by Herrera were accurate copies of its medical records regarding Herrera. We conclude that a reasonable juror could find in favor of authenticity based on this evidence. *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (observing that a proponent makes a prima facie showing of authenticity when "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification" (internal quotation marks and citation omitted)); 31 Wright & Miller, *Fed. Prac. and Proc.* § 7105 (explaining that the federal rules permit "authentication by combining elements from [the federal analog to NRCP 52.025-.105]"); 8 Michael H. Graham, *Handbook of Fed. Evid.* § 901(b)(4) (9th ed. 2024) (recognizing that "appearance, contents, substance, internal patterns, or other distinctive characteristics," when "taken together with all the circumstances," may be sufficient to support a finding that the evidence in question is what its proponent claims).[1]

We disagree with Gutierrez-Zacatenco's assertion, however, that *any* record produced by an opposing party in discovery should automatically be deemed authentic. Authentication is a fact-specific inquiry, and we decline to adopt such a broad rule here. *United States v. Martinez-Lantigua*, 857 F.3d 453, 457 (1st Cir. 2017) (explaining that "authentication rulings are necessarily fact-specific" (quoting *United States v. Alicea-Cardoza*, 132 F.3d 1, 4 (1st Cir. 1997))); *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) ("The type and quantum of evidence required [for authentication] . . . depends upon a context-specific determination . . . ."). Consistent with the caselaw cited herein, it was

---

[1]We construe federal decisions addressing Federal Rule of Evidence 901(a) as persuasive authority for interpreting NRS 52.015. *Rodriguez v. State*, 128 Nev. 155, 160 n.4, 273 P.3d 845, 848 n.4 (2012).

Herrera's production of her own medical records, combined with other circumstantial evidence, that ultimately satisfied NRS 52.015 in this case.

We are also not persuaded by Herrera's argument that the records were properly excluded based on the missing report from Herrera's final treatment in 2017. Once the proponent makes a prima facie showing of authenticity, the jury must weigh the probative value of that evidence, including its flaws. *United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015) (explaining that courts do "not require conclusive proof of authenticity before allowing the admission of disputed evidence" (quoting *United States v. Jiminez Lopez*, 873 F.2d 769, 772 (5th Cir. 1989)), and that any "flaws in authentication 'go to the weight of the evidence instead of its admissibility'" (quoting *United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir. 2011))). Indeed, courts widely agree that "[q]uestions as to the documents' content and completeness bear upon the weight to be accorded the evidence and do not affect the threshold question of authenticity." *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1376 (3d Cir. 1991); *United States v. Soulard*, 730 F.2d 1292, 1298 (9th Cir. 1984) ("[O]nce adequate foundational showings of authenticity and relevancy have been made, the issue of completeness then bears upon the [proponent]'s burden of proof and is an issue for the jury to resolve . . . .").

Herrera produced an incomplete copy of her 2017 medical records in discovery, then parlayed that incomplete disclosure into an exclusionary ruling that advantaged her. She has never claimed, however, that the medical records she *actually produced* were inauthentic and instead acknowledged that she received the records from Align Med via authorization she signed to release her records. Although Herrera was permitted to attack the 2017 records' probative value in view of the missing

10

report from her final chiropractor appointment—and she did so when deposing Dr. Kucera and Dr. Wang—that missing report does not invalidate Gutierrez-Zacatenco's prima facie showing of authenticity for the remaining 2017 medical records. The district court abused its discretion in concluding otherwise.

*Gutierrez-Zacatenco's failure to comply with NRCP 16.1(a) was harmless and therefore did not warrant excluding the 2017 records*

As part of discovery procedure, each party must include in their initial disclosures a copy "or a description by category and location" of all documents that the disclosing party has in its possession to support its claims and defenses. NRCP 16.1(a)(1)(A)(ii). Each party must also include in their pretrial disclosures "an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises." NRCP 16.1(a)(3)(A)(iii). The purpose of the initial and pretrial disclosure rules is to provide the opposing party with notice of the disclosing party's factual and legal contentions and thus "prevent trial by ambush or unfair surprise." *Turner v. State*, 136 Nev. 545, 553, 473 P.3d 438, 447 (2020) (internal quotation marks omitted). If a party fails to comply with NRCP 16.1 disclosure rules, "the party is not allowed to use that information or witness" at trial, "unless the failure was substantially justified or is harmless." NRCP 37(c)(1).

Gutierrez-Zacatenco contends that the district court erred by introducing a new reason to exclude Herrera's 2017 medical records based on his failure to list those records in his initial and pretrial disclosures in accordance with NRCP 16.1. He argues that he disclosed his intent to rely on the 2017 records when he identified Herrera's "responses to written discovery" as documents he would offer for impeachment and demonstrative

11

purposes and listed Align Med as a potential witness. Regardless, Gutierrez-Zacatenco claims that Herrera was aware that her 2017 medical records were a focal point of Gutierrez-Zacatenco's defense, such that any failure to strictly comply with NRCP 16.1 was harmless.

We disagree with the district court's conclusion that Gutierrez-Zacatenco violated NRCP 16.1(a)(1)(A)(ii). That rule requires a party to disclose categories and locations of documents in their possession that may be used to support claims or defenses. But it does not require that party to identify records that they only obtained through the opposing party's discovery production. We agree with the district court, however, that Gutierrez-Zacatenco failed to comply with NRCP 16.1(a)(3)(A)(iii) because his pretrial disclosures relied on broad, catchall descriptions rather than specifically identifying documents and exhibits he intended to use at trial.

We nonetheless conclude that his noncompliance with NRCP 16.1(a)(3)(A)(iii) was harmless under NRCP 37(c)(1).[2] Herrera was aware well before trial that Gutierrez-Zacatenco planned to rely on her 2017 medical records because she moved in limine to exclude those records as unrelated to the 2019 accident and questioned Gutierrez-Zacatenco's experts at deposition concerning their reliance on those records. Gutierrez-Zacatenco also disclosed that his experts would testify consistently with their reports and listed Align Med's treating physician and custodian of

---

[2]Herrera argues that Gutierrez-Zacatenco waived this argument by failing to raise it earlier in the proceedings. We have made clear, however, that NRCP 37(c)(1) provides the governing analytical framework for failures to disclose under NRCP 16.1. *Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 265, 396 P.3d 783, 787 (2017). And it is well-established that we may consider a relevant issue to prevent plain error "where a statute which is clearly controlling was not applied by the trial court." *Bradley v. Romeo*, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986).

12

records as trial witnesses in his disclosures. Under these circumstances, Herrera had sufficient notice that her 2017 medical records were a central component of Gutierrez-Zacatenco's defense such that the parties were prepared to "try [the] case[ ] on the merits, [rather than] by surprise [or] ambush." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014). Accordingly, the district court abused its discretion by excluding the 2017 medical records for failure to comply with NRCP 16.1(a)(3)(A)(iii). *Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1049 (2010) ("This court generally reviews a district court's imposition of a discovery sanction for abuse of discretion.").

*The district court abused its discretion in excluding evidence of the medical liens based on the collateral source rule*

Gutierrez-Zacatenco argues that the district court misapplied the collateral source rule by concluding that it barred evidence that Herrera's treating physicians had medical liens on any recovery in this case to secure payment and that such evidence should have been admitted as relevant to show the biases of Herrera's treating physicians. The collateral source rule prevents the jury from reducing the plaintiff's damages on the ground that the plaintiff received compensation for their injuries "from a source wholly independent of the tortfeasor." *Khoury v. Seastrand*, 132 Nev. 520, 538-39, 377 P.3d 81, 93-94 (2016). As we have expressly held "that evidence of the existence of medical liens to prove bias does not invoke the collateral source rule," *id.*, we agree that the district court erred by categorically excluding the medical lien evidence on that basis. We explained in *Khoury* that evidence of a medical lien does not implicate the collateral source rule because a medical lien represents an obligation personally incurred by the plaintiff for treatment, rather than compensation paid to the plaintiff by a third party. *Id.*; *cf. Robinson v.*

13

*G.G.C., Inc.*, 107 Nev. 135, 143, 808 P.2d 522, 527 (1991) ("The trier of fact has the right to take business associations into account when determining the credibility of witnesses and the weight to give their testimony."). Thus, the district court abused its discretion by disregarding controlling law as to the admissibility of the medical liens. *LVMPD v. Blackjack Bonding*, 131 Nev. 80, 89, 343 P.3d 608, 614 (2015) (explaining that the district court abuses its discretion when it "disregards controlling law"). Without applying the collateral source rule, the district court must review on remand the relevancy and thus admissibility of the medical lien evidence.

*Because the evidentiary errors affected Gutierrez-Zacatenco's substantial rights, he is entitled to a new trial*

An evidentiary error warrants a new trial when it affects a party's substantial rights such that "a different result might reasonably have been reached" without the error. *McClendon v. Collins*, 132 Nev. 327, 333, 372 P.3d 492, 495-96 (2016). Dr. Wang and Dr. Kucera both testified that Herrera's 2017 medical records were necessary to their opinions on causation and damages because, without them, they could not determine whether the injuries for which Herrera later received certain treatments were attributable to the 2017 accident or the accident at issue in this case. By excluding the 2017 records, the district court precluded Dr. Wang and Dr. Kucera from testifying at trial about Herrera's 2017 accident and records. The exclusion of the 2017 records therefore prevented Gutierrez-Zacatenco from using the 2017 accident and corresponding medical records to refute Herrera's theory that the 2019 accident with Gutierrez-Zacatenco caused Herrera's injuries, resulting in substantial damages. Though Dr. Kucera and Dr. Wang may have disagreed as to the nature and extent of Herrera's injuries, they ultimately agreed that some of Herrera's treatment was not related to the 2019 accident and heavily relied on Herrera's 2017

14

records to support those opinions. We therefore conclude that Gutierrez-Zacatenco has shown that, had the court admitted the 2017 medical records, there was a reasonable chance that the jury might have returned a different verdict. Accordingly, a new trial is warranted.

*CONCLUSION*

The district court legally erred when it ruled that Gutierrez-Zacatenco could authenticate Herrera's medical records only through NRS 52.325, as that statute expressly pertains to a custodian of records' authentication of medical records in response to a subpoena for the records. Medical records can be authenticated through other means sufficient to satisfy NRS 52.015. Gutierrez-Zacatenco satisfied NRS 52.015 because (1) he sought to rely on medical records Herrera herself had produced in discovery, (2) the documents contained indicia of reliability on their face, (3) the custodian of records certified that the records were authentic, and (4) Herrera did not dispute that the records she produced accurately reflected treatment she received in 2017. That those records failed to include a record of Herrera's last appointment in 2017 does not render them inauthentic. Rather, the jury must assess the weight to be given to the records in light of their incompleteness. While Gutierrez-Zacatenco did not include the 2017 records in his pretrial disclosures as required under NRCP 16.1, that violation was harmless under NRCP 37(c)(1) because Herrera had advance notice that Gutierrez-Zacatenco planned to rely on those records in his defense. The district court also abused its discretion by disregarding controlling law regarding the collateral source rule when excluding evidence that Herrera's doctors treated her on a medical lien. We conclude that a new trial is warranted and therefore reverse and remand for proceedings consistent with this opinion. In light of this disposition, we need not address Gutierrez-Zacatenco's challenges to the district court's other evidentiary

15

rulings. This disposition also renders moot the appeal of the district court's order denying Gutierrez-Zacatenco's NRCP 60(b) motion. We necessarily vacate the award of attorney fees and costs.

Cadish, J.

We concur:

Herndon, C.J.

Pickering, J.

Parraguirre, J.

Bell, J.

Stiglich, J.

Lee, J.